OFFICE AND PROFESSIONAL EM-
PLOYEES INTERNATIONAL UNION,
LOCAL 2, et al., Appellants,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, et al.

No. 91–7003.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 13, 1992.

Decided April 24, 1992.

Lucinda M. Finley, Buffalo, N.Y., with whom Joseph E. Finley, Baltimore, Md. and David R. Levinson, Washington, D.C., were on the brief for appellants.

Kenneth I. Jonson, with whom Ann S. DuRoss, Asst. Gen. Counsel, Richard J. Osterman, Jr., Sr. Counsel and Edward J. O'Meara, Counsel, F.D.I.C., Washington, D.C., were on the joint brief for appellees.

Before: RUTH BADER GINSBURG, BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This case involves a unionized bank put into receivership under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) § 212, 12 U.S.C. § 1821. The appeal calls for a reconciliation of section 212's claim processing procedure with section 301(b) of the Labor Management Relations Act, 29 U.S.C. § 185(b), which prescribes that a labor organization may sue "in behalf of the employees whom it represents."[1]

The matter in controversy stems from a collective bargaining agreement between plaintiff Office and Professional Employees International Union, Local 2 (Local 2 or Union) and the National Bank of Washington (NBW). Dated May 17, 1990, the agreement proved the last in a series between the Union and NBW; scheduled to run from April 1, 1990 through March 31, 1991, the agreement included, among employee benefits, provisions for vacation and severance pay due upon the termination of a bargaining unit member's employment. In August 1990, NBW failed and was placed under the stewardship of the Federal Deposit Insurance Corporation (FDIC or Corporation) as Receiver. Banking operations ceased, and all bargaining unit employees, over 370 in number, were discharged.

Local 2, in late August 1990, filed two group claims with FDIC as Receiver: one for severance benefits due employees, the other for accrued vacation pay. FDIC as Receiver rejected both group claims and informed the Union that it would process only claims by individual employees or by Local 2 if made pursuant to a power of attorney from an individual employee.[2] The Union thereupon commenced this action seeking a determination that all former NBW employees covered by the Local 2-negotiated collective bargaining agreement were entitled to severance and vacation pay.

At a November 30, 1990 status call, the district judge, on his own initiative, and without benefit of briefing, dismissed the case. The judge held that the Union, because it was not a "creditor" of the failed bank, did not have standing to bring suit.[3] We reverse and hold that the Union, as collective bargaining representative and contract signatory on behalf of all unit members, has standing to assert employee compensation rights arising out of the contract the Union obtained.

## I. Statutory Background

Congress enacted FIRREA in 1989 to enable the federal government to respond effectively to the worsening financial condition of the nation's banks and savings institutions. In addition to measures intended to help troubled institutions stay afloat, e.g., 12 U.S.C. § 1823(c), (k), the statute revised the procedures for winding up the affairs of failed banks; these revisions encompassed provisions on the presentation, determination, and payment of claims against a failed bank's assets. 12 U.S.C. § 1821(d)(3)–(14); see also id. § 1821(c) (specifying conditions under which FDIC is appointed conservator or receiver of a bank or savings association); id. § 1821(d)(1)–(2), (e) (delineating large authority of FDIC as conservator and receiver).

---

1. The appellant Union believes that this case involves "the first unionized bank put into receivership under FIRREA." Brief for Appellants at 3.

2. FDIC also rejected the Union's request for the names and addresses of all bargaining unit employees, some of whom, apparently, did not belong to the Union.

3. Local 2 is now plaintiff in a second law suit, Civ. No. 91–0795 (D.D.C.), on behalf of some 261 former NBW employees who personally filed claims or gave powers of attorney to the Union. FDIC as Receiver has allowed the claims of those employees for vacation pay but has denied their claims for severance pay. Some 117 unit members filed neither an individual claim nor a power of attorney and are therefore not included in that pending litigation.

Subsections 1821(d)(3)(B) and (C) of the Act instruct the Corporation, as Receiver of a failed bank, to publish, and mail to "creditor[s] shown on the institution's books," notice of the liquidation, providing at least 90 days for filing "claims." Within 180 days of the date a claim is filed, FDIC "shall determine" whether the claim is allowable, *id.* § 1821(d)(5)(A)(i); if the claim is disallowed, FDIC must inform the "claimant" of the reason for that action. *Id.* § 1821(d)(5)(A)(iv). FIRREA contains no section generally defining what constitutes a "claim" or who may be a "creditor" or "claimant."

A party dissatisfied with FDIC's initial determination is given the choice between seeking administrative review (in which case the Corporation's second instance decision is subject to court challenge under the familiar "arbitrary and capricious" standard) and proceeding directly to district court. *Id.* § 1821(d)(6), (7).[4] FIRREA is strict in its demand that claimants first obtain an administrative determination. Congress was concerned, however, about the constitutionality of entrusting to executive agency adjudication claims that ordinarily lie within the province of the courts. Accordingly, Congress instructed district courts to "determine" claims against failed banks *de novo*, rather than merely to review, for error or abuse, FDIC's initial decisions. *See id.* § 1821(d)(5)(E), (6), (7); H.R.Rep. No. 54, 101st Cong., 1st Sess., pt. 1, at 418–19, *reprinted in* 1989 U.S.C.C.A.N. 86, 214–15.

## II. Analysis

▮ We note at the outset that the question we must resolve—the qualification of the Union to submit contract benefit claims against the failed bank's assets on behalf of bargaining unit employees—is not one on which we owe deference to the FDIC. *Compare Chevron USA Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Congress did not commit questions of court access and national labor law to the Corpo-

ration's administration. Moreover, as just pointed out, FIRREA itself calls upon the district courts to decide *de novo* claims initially presented to FDIC. We note too that the abrupt termination of this case in the district court has required the parties and this court to proceed without the substantial aid that briefing and, thereafter, full argument in the court of first instance generally afford.

To resolve the controversy precipitated by the dismissal for want of Union standing, we look first to law by now long in place. Were NBW not in FDIC receivership pursuant to FIRREA, Local 2's standing to sue for employees' collective bargaining benefits would be beyond genuine debate. The pathmarking case is *International Union, United Auto. Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). The Supreme Court there clarified:

> There is no merit to the contention that a union may not sue to recover wages or vacation pay claimed by its members pursuant to the terms of a collective bargaining contract. Such a suit is among those ... § 301 [of the Labor Management Relations Act] was designed to permit. This conclusion is unimpaired by the fact that each worker's claim may also depend upon the existence of his individual contract of employment.... [T]here is every reason to recognize the union's standing to vindicate employee rights under a contract the union obtained.... [I]ndeed, the union's standing to vindicate employee rights under § 301 [which provides in subsection (b) that "[a]ny ... labor organization may sue or be sued ... in behalf of the employees it represents in the courts of the United States"] implements no more than the established doctrine that the union's role in the collective bargaining process does not end with the making of the contract.

*Hoosier Cardinal*, 383 U.S. at 699–700, 86

---

**4.** If FDIC fails to pass on a claim within the 180-day period, the claimant is similarly entitled to sue in federal district court. *Id.* § 1821(d)(6)(A)(i).

S.Ct. at 1110.[5]

The logic of *Hoosier Cardinal,* later decisions develop, is not confined to cases in which a union sues "on" the collective bargaining contract. *See, e.g., United Food & Commercial Workers Local Union No. 137 v. Food Employers Council, Inc.,* 827 F.2d 519, 524 (9th Cir.1987) (union has standing to bring action, under 28 U.S.C. § 2201, seeking declaratory judgment that collective bargaining agreement provision is illegal); *cf. National Treasury Employees Union v. Campbell,* 589 F.2d 669, 672 & n. 4 (D.C.Cir.1978) (union's status as representative entitles it to challenge, on employees' behalf, insurance rate increase ordered by Civil Service Commission). Most germane to the issue we confront, bankruptcy courts recognize a union's authority to pursue, after the debtor's rejection of a labor agreement, employees' collectively bargained rights to wages and benefits. *See, e.g., In re U.S. Truck Co.,* 89 B.R. 618, 621–23 & n. 3 (E.D.Mich.1988).

■ FDIC, citing *United States ex rel. United Brotherhood of Carpenters & Joiners v. Woerfel Corp.,* 545 F.2d 1148, 1151 (8th Cir.1976), asserts that section 301 of the Labor Management Relations Act does not transform labor unions into the all-purpose "general litigation agent[s]" of employees. Case law, however, sets this guiding principle: when a claim derives from a collective bargaining agreement— an arrangement negotiated by a union and to which it is a signatory—the labor organization is *an* appropriate party (although not *the only* appropriate party) to vindicate employees' rights.[6]

Perhaps in recognition of the force exerted by section 301 of the Labor Management Relations Act, the *Hoosier Cardinal* opinion, and decisions in line with the Su-

preme Court's clarifying exposition, FDIC distances itself from the district court's conclusion that "the union did not have standing to bring suit." "Lack of jurisdiction" and "failure to exhaust administrative remedies," FDIC suggests, are proper bases for affirming the district court's dismissal of the Union's complaint. Whatever the label, however, the Corporation's burden here remains the same: to persuade us either that FIRREA has carved out an exception to labor organizations' ordinary representational authority or—practically speaking, the same thing—that the Act imposes on unions a power-of-attorney prerequisite not imposed in other settings.

FDIC correctly reads FIRREA, particularly 12 U.S.C. § 1821(d)(6) and (13)(D), to preclude suit on a claim that was not first presented to the Receiver.[7] This mandatory exhaustion requirement, FDIC emphasizes, has been vigilantly enforced by sister circuits. *See, e.g., FDIC v. Shain, Schaffer & Rafenello,* 944 F.2d 129, 132 (3d Cir.1991); *Rosa v. Resolution Trust Corp.,* 938 F.2d 383 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). But those decisions do not address the matter before us. FDIC's contention is not that plaintiff Local 2 *bypassed* the administrative claim procedure—the Union, undeniably, filed suit only after its proffered claim was disallowed. Rather, FDIC maintains that the Union, without receipt of a power of attorney from each employee purportedly represented, was not a proper "claimant" in the first place.

■ As earlier observed, the terms "claim" and "claimant" are not defined in the statute, and Congress, in deliberations on FIRREA, apparently did not advert to the Act's implications for collective bar-

---

5. Relevant to argument made here by FDIC, the *Hoosier Cardinal* Court specifically rejected the contention that union standing could be sustained only if individual employees assigned their benefit claims to the union. 383 U.S. at 700 n. 3, 86 S.Ct. at 1110 n. 3.

6. An employee's "personal rights" may be vindicated *either* by the union *or* by the employee herself. *See Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 511 (9th Cir.1978) (citing cases); *In re Continental Airlines Corp.,* 901 F.2d 1259, 1261 (5th Cir.1990) (noting that individual employees could "opt out" of union's claim).

7. Section 1821(d)(13)(D) precludes court jurisdiction over claims against FDIC as Receiver except as the Act permits. Section 1821(d)(6) requires a creditor of a failed institution to file an administrative claim, and permits suit only after disallowance of the claim or expiration of the time provided for FDIC to review the claim.

gaining arrangements. Nonetheless, FDIC urges that the statute's notice requirements, 12 U.S.C. § 1821(d)(3)(B), (C), claim disallowance provision, *id.* § 1821(d)(5)(D), and suit permission section, *id.* § 1821(d)(6)(A), together indicate that only individuals with a direct interest in recovering from the failed institution may sue FDIC. The Union, which has no "claim" of its own to assets of NBW, FDIC concludes, cannot be a "creditor" within the meaning of the Act.

We are unpersuaded. The meaning of the term "creditor" may vary from one context to the next, and is not inevitably narrow. *See In re Altair,* 727 F.2d 88, 89 n. 2, 90 (3d Cir.1984) (allowing union to sit on bankruptcy "creditors' committee" and specifically rejecting contention that a union must be owed money in its own right to be a "creditor"). Local 2 observes, moreover, that FIRREA's very text appears to contemplate claims beyond those by "creditor[s] ... on the ... books" to whom statutory notice must be sent. *See* 12 U.S.C. § 1821(d)(13)(D) (referring, *inter alia,* to "any claim relating to any act or omission of [failed] institution or the Corporation as receiver"); *Johnson v. Home State Bank,* —— U.S. ——, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (under Bankruptcy Code, "claim" has commodious meaning).

Nor are we persuaded that permitting a union to submit an administrative claim on behalf of bargaining unit members would frustrate the purposes of the FIRREA claim procedure. Relying on cases interpreting provisions of the Federal Tort Claims Act (FTCA), *see* 28 U.S.C. §§ 1346, 2675(a); *Founding Church of Scientology v. Director, Federal Bureau of Investigation,* 459 F.Supp. 748, 754 (D.D.C.1978), FDIC contends that "group" claims would thwart Congress' expressed desire that claims be presented, in the first instance, to the Receiver for prompt settlement. In the tort claims setting, FDIC notes, courts have held that claims filed by an individual purporting to act on behalf of a class would unduly complicate and protract both agency and court adjudication.

Even if we were fully convinced that the interests of administrative and judicial economy would be advanced by processing more than 370 discrete claims rather than one overarching complaint, the Federal Tort Claims Act analogy would not be imposing. Claims arising out of a single agreement governed by a single source of law, *see Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957) (federal common law governs collective bargaining agreements), are unlikely to present the variety of individual divergencies mass torts might entail. *Cf. Scientology,* 459 F.Supp. at 755–56 (contrasting FTCA with Title VII of the Civil Rights Act of 1964, under which class action may be brought although only named representative has exhausted administrative remedies).

Moreover, a claim by a union for collective bargaining benefits differs from typical mass tort claims in this key respect. The union is no mere volunteer whose representation of others must be checked for adequacy. *Cf.* FED.R.CIV.P. 23(a)(4). The labor union has already been certified by a neutral government agency as the "exclusive representative," *see J.I. Case, Inc. v. NLRB,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), of the bargaining unit employees. *See International Union, United Auto. Workers v. Brock,* 477 U.S. 274, 289, 106 S.Ct. 2523, 2532, 91 L.Ed.2d 228 (1986) ("While a class action creates an ad hoc union of injured plaintiffs, ... [a union] suing to vindicate the rights of its members can draw upon a pre-existing reservoir of expertise and capital."). The Union here, we think it safe to assume, is better equipped to address the terms of the collective bargaining agreement it has negotiated than are the individual workers, the "creditors" FDIC insists must be the "claimants."

We find unacceptable FDIC's suggestion that the FIRREA administrative claim procedure, following FTCA's, is intended to serve as an obstacle, winnowing out creditors who—despite apparent entitlement—are not sufficiently "interested" in obtaining money due them. *See* Brief for Appellees at 11. Whatever its explanatory pow-

er for federal tort suits—which are litigated in the shadow of sovereign immunity, a setting where the law has traditionally demanded punctiliousness from claimants, *see, e.g., Ardestani v. United States,* —— U.S. ——, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991), such a policy appears largely alien to the purposes of FIRREA's claim procedure.

The primary function of the FIRREA rules, so far as we can tell, is to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution. Instead of separating the "interested" creditors from the uninterested, FDIC's position here appears to distinguish the savvy from the legally unsophisticated (among them, employees accustomed to relying on the union to assert their rights to benefits), and those who actually received required notice from those who did not.[8] *See generally In re American Reserve Corp.,* 840 F.2d 487, 489–90 (7th Cir.1988) (making similar observations in bankruptcy context).

FDIC emphasizes that it sees no problem with Local 2's submitting benefits claims— so long as the individual employee grants the Union power of attorney. As to the statutory source of the asserted "power of attorney" requirement—and why the Union's representational authority under generally applicable labor law principles does not govern—FDIC is tellingly silent. *See In re U.S. Truck,* 89 B.R. at 623 n.3 (union is "authorized agent" for purposes of Bankruptcy Rule).

If FIRREA's claim procedure needs to borrow from another statutory regime, then bankruptcy law, where the terms "claim," "claimant," and "creditor" are commonplace, seems a source more promising than the FTCA. Bankruptcy Rules, we recognize, do not govern of their own force in a FIRREA liquidation. FDIC may well have cause to reject the analogy in some instances. But FDIC has not suggested such cause with respect to Local 2's complaint. We therefore count it significant that bankruptcy courts appear routinely to permit unions to file claims for benefits on employees' behalf. *See In re Continental Airlines,* 901 F.2d at 1261; *In re U.S. Truck; see also In re Chateaugay Corp.,* 104 B.R. 626, 636–37 (S.D.N.Y.1989) (union may file proof of claim on behalf of individuals it represents in a Title VII action against debtor).

■ FDIC forecasts that some cases will arise where a union will not be able to prosecute a claim without the active involvement of the represented employee. Such a circumstance—which, we note, might more likely be attributable to lack of *information* than to lack of authorization—is provided for in the bankruptcy setting, in a manner we find instructive.

The Bankruptcy Code, consistent with its purpose to facilitate creditor compensation, does not require the filing of unnecessary "proofs of claim." *See* 11 U.S.C. §§ 501(a), 1111(a). Bankruptcy Rules 3001 and 2019(a), however, provide that when an "authorized agent" files a claim on another's behalf, the representative shall furnish a verified statement setting forth the names and addresses of represented parties, the nature and amount of the claims, the circumstances that gave rise to them, and the "instrument, if any, whereby the [representative] ... is empowered to act on behalf of creditors." BANKR.R. 2019(a).[9] Such a statement would permit a union to represent employees in the administrative process, while guarding against vague, undifferentiated claims that could unduly distract or perplex the Receiver. In this case, section 301(b) of the Labor Management

---

**8.** We note that the Receiver did not send the notice to employees "return receipt requested." At oral argument, counsel for FDIC indicated that he did not know how many of the former employees actually received notice.

**9.** Although applicable on its face to proceedings under Chapters 9 and 11 of the Bankruptcy Code, Rule 2019 is commonly invoked without discussion in Chapter 7 liquidations, the bankruptcy proceedings most analogous to the failed bank liquidation here. *See* Anthony Sabino, *In a Class By Itself: The Class Proof of Claim in Bankruptcy Proceedings,* 40 DEPAUL L.REV. 115, 122 (1990). *But see In re Great W. Cities, Inc.,* 107 B.R. 116, 120 n. 16 (N.D.Tex.1989) (Rule applies only under Chapters 9 and 11).

Relations Act and the collective bargaining agreement supplied Local 2 adequate authorization, *see In re U.S. Truck,* 89 B.R. at 623 n.3, and the identity of the claimants and the nature of their claims were sufficiently clear to FDIC.[10] *See In re Chateaugay,* 104 B.R. at 626 n. 15 (permitting union claim where employee class is described, but not named). FDIC, which refused to supply the Union the names and addresses of bargaining unit employees, cannot be heard to complain that the Union's claim was insufficiently definite.

### III. Conclusion

We hold that Local 2 has standing to sue FDIC as Receiver. A union's authority, outside of FIRREA, to sue on employees' behalf for the fringe benefits in question is plain, and we find nothing in the financial institution reform statute to indicate that Congress intended unions to play a diminished role in that setting. In reaching this conclusion, we find particularly informative the experience of bankruptcy courts, tribunals charged with a task similar to the

Receiver's. Those courts consistently recognize union standing in circumstances comparable to those before us. Union standing, we are satisfied, compromises neither the autonomy of individual employees—who remain free to file their own claims, nor the efficiency of FIRREA's claim determination process. As is the case in bankruptcy, FDIC reasonably may require a claimant—union or employee—to supply information the Corporation lacks, details necessary for the allowance of the claim. But such an information requirement does not determine the Union's standing or the court's subject matter jurisdiction. The judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.[11]

*It is so ordered.*

10. Courts have taken different views of how literal compliance with Rule 2019 must be. *Compare In re Chateaugay,* 104 B.R. 626, 636 nn.12 & 13 (S.D.N.Y.1989), *and In re Charter Co.,* 876 F.2d 866 (11th Cir.1989), *cert. dismissed,* 496 U.S. 944, 110 S.Ct. 3232, 110 L.Ed.2d 678 (1990) (both reading rule flexibly, in light of purposes of Bankruptcy Code), *with In re Vestra*

*Indus., Inc.,* 82 B.R. 21, 22 (Bankr.D.S.C.1987) (rejecting union's claim which failed to state names and addresses of employees, but granting employees additional time to file new claims).

11. On remand, the district court may consider consolidating this case with Civ. No. 91–0795. *See supra* note 3.