Frank J. KELLEY, Attorney General of the State of Michigan, Frank J. Kelley, Ex rel. State of Michigan, Michigan Department of Natural Resources, Frank J. Kelley, Petitioners,

v.

ENVIRONMENTAL PROTECTION AGENCY, William K. Reilly, Administrator, Respondents,

American Bankers Association, Equipment Leasing Association of America, Commercial Finance Association, American Council of Life Insurance, American College of Real Estate Lawyers, Intervenors.

CHEMICAL MANUFACTURERS ASSOCIATION, Petitioner,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent,

American Bankers Association, Equipment Leasing Association of America, Commercial Finance Association, American Council of Life Insurance, American College of Real Estate Lawyers, Intervenors.

Nos. 92–1312, 92–1314.

United States Court of Appeals, District of Columbia Circuit.

June 14, 1994.

As Amended June 14, 1994.

Lois J. Schiffer, Acting Asst. Atty. Gen., Bradley M. Campbell, U.S. Dept. of Justice, and Earl Salo, Counsel, U.S.E.P.A., filed a Petition for Rehearing and Suggestion for Rehearing En Banc on behalf of respondents.

John J. Gill, Thomas J. Greco, Michael F. Crotty, Counsel, American Bankers Ass'n, Samuel I. Gutter, David T. Buente, Jr., Counsel, Commercial Finance Ass'n, Roger D. Schwenke, Counsel, American College of Real Estate Lawyers, Margaret V. Hathaway, Howard L. Feinstein, Counsel, American Council of Life Ins., Phillip E. Stano, Counsel, American Council of Life Ins., and Edwin E. Huddleson, III, Counsel, Equipment Leasing Ass'n of America, filed a Petition for Rehearing and Suggestion for Rehearing En Banc on behalf of intervenors.

Thomas L. Casey, Sol. Gen., State of MI, and Jeremy M. Firestone, Asst. Atty. Gen., State of MI, filed a Response to Petitions for Rehearing and Suggestions for Rehearing En Banc on behalf of petitioners MI Atty. Gen. Frank J. Kelley, the State of MI, and the MI Dept. of Natural Resources.

Theodore L. Garrett, David F. Zoll, General Counsel, and Dell E. Perelman, Sr. Asst. Gen. Counsel, filed a Response to Petitions for Rehearing and Suggestions for Rehearing En Banc on behalf of petitioner Chemical Mfrs. Ass'n.

Before MIKVA, Chief Judge, SILBERMAN, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.*

## ON PETITION FOR REHEARING

SILBERMAN, Circuit Judge:

The government and intervenors—dropping most of their statutory arguments before the panel—petition for rehearing based largely on our colleague's dissent (which issued after our opinion and therefore to which we did not refer). We held that Congress had not authorized EPA to issue substantive regulations that determined under what circumstances a lender is to be deemed an "owner and operator of a vessel or facility" as used in CERCLA § 107 (and thus liable thereunder) because that section, and section 106, command that liability issues are to be resolved in federal district court. Therefore, Congress did not implicitly delegate to EPA—one of the possible litigants—authority to specify when a lender will be regarded as an owner or operator. Indeed, Congress itself in the definitional section of the statute (section 101) explicitly stated that the term owner or operator "does not include a person who without participating in the management of a vessel or facility holds indicia of ownership primarily to protect his security interest in the vessel or facility." 42 U.S.C. § 9601(20)(A). The Chief Judge agreed that some liability issues were to be determined *de novo* by the district court under the familiar preponderance of evidence standard, but he thought they were limited to questions of causation set forth in section 107(b):

(b) Defenses

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant ...; or

(4) any combination of the foregoing paragraphs.

42 U.S.C. § 9607 (1988). What the Chief Judge referred to as "coverage" questions on the other hand—just which party can be deemed responsible, pursuant to section 107(a), for causing liability—were, according to Judge Mikva, to be treated differently: Congress authorized EPA to advance its views on those questions through substantive regulations entitled to *Chevron* deference.

Judge Mikva relied on scattered provisions of the statute which do not directly bear on any parties' liability—let alone that of a lender. For instance, section 103(c) authorizes EPA to prescribe the manner and form by which owners and operators are to notify the agency of hazardous waste storage, treatment, or disposal at their facilities, and section 103(d) authorizes EPA to promulgate rules and regulations specifying recordkeeping requirements to which owners and operators, *inter alia*, are subject. But to be authorized to prescribe the manner and form by which normal owners and operators are to report to the agency is not necessarily to be authorized to determine the specific circumstances under which a lender would be an owner and operator and therefore liable for hazardous waste clean up. Judge Mikva argued that to implement these sections "effectively" EPA was *obliged* to define the terms owner and operator generally. Even that does not seem to be so. EPA's specific responsibility under section 103(c) is merely to pass the reported information on to state agencies, and importantly, the agency was granted no authority to enforce that section. An entity who refused to notify EPA could only be prosecuted criminally (by the Justice Department) and only for a willful violation—which presumably would not extend to a good faith belief that one was not, under the circumstances, an owner or operator.[1]

---

* *Chief Judge* MIKVA would grant the petition for rehearing.

1. Under section 109 a civil penalty may also be imposed for a 103(d) violation, but only for will-

In addition, Judge Mikva relied on EPA's authority to "undertake" remedial action at its own expense to deal with imminent dangers or to allow a qualified owner or operator (one who will act promptly and properly) to take the action itself. But EPA, which can agree with an entity to fund all or part of such activity, can, with respect to liability, only offer an agreement not to sue. *See* 42 U.S.C. § 9622(c)(1). The statute makes clear that such a covenant affects only that party's liability to the United States, and "[i]n no event shall a potentially responsible party be subject to a lesser standard of liability" by virtue of its agreement to undertake remedial action under section 104 and to be reimbursed by EPA. 42 U.S.C. § 9604(a)(1); *see also* 42 U.S.C. § 9622(c)(1). And section 122, which section 104 cross-references, specifically provides that EPA "shall make all reasonable efforts to recover the amount of such reimbursement under section 9607 of this title [CERCLA § 107]...." 42 U.S.C. § 9622(b)(1). In other words, as we emphasized in our original opinion,[2] the drafters always came back to the liability provisions of section 107, which calls for a judicial determination.

It seems to us, moreover, that there are analytical difficulties with the Chief Judge's approach to section 107, which would divide up authority over liability issues between "coverage" and "causation." Issues of coverage—the "who" questions—are intertwined with what Judge Mikva terms causation—the "what" questions—and, therefore, it would be terribly difficult for federal courts to defer to an EPA regulation as to who might be liable without overlapping into the question of what caused the injury to the environment. In that respect—and we think this point is, by itself, determinative—even if EPA might be thought to enjoy authority to define "owner or operator" for some purposes, the stated regulation before us does not even purport to define those terms. Instead, EPA issued its extensive regulation to define:

> three key terms found in the exemption that are not otherwise defined in CERC-

LA: (1) "Indicia of ownership," (2) the requirement that the ownership indicia be held "primarily to protect [a] security interest," and (3) the prohibition of the holder from "participating in the management" of the facility.

57 Fed.Reg. 18374 (1992). The words "definition" and "coverage" as used by the Chief Judge and the government are therefore misleading insofar as they imply connotations of status under the Act. The agency has not really offered coverage definitions but rather has presented its view, in the form of a regulation, of the circumstances under which a lender will not be liable for a facility's release of hazardous waste.

The Chief Judge's dissent and the government's petition for rehearing thus ignore the genesis of the regulation before us—that it is an effort to issue a legislative "holding" as to the circumstances under which a lender would be liable, rather than to publish a general definition of owner or operator. But even if one viewed the regulation as does the Chief Judge, section 107 provides no support for the notion that courts decide the causation aspects of liability while EPA retains authority to define terms of "coverage." Section 107(a) sets forth the general grounds whereby liability is imposed on persons, including "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of...." 42 U.S.C. § 9607(a)(2) (1988). It follows that a plaintiff, whether or not EPA, who wishes to claim that "X" is liable under subsection (a)(2) must prove that "X" was the owner or operator at the time of disposal. Since the proceeding to establish that claim is in federal district court, in the absence of any language to the contrary, Congress must have meant that the plaintiff bore the burden to prove those facts by a preponderance of the evidence. After all, that is the evidentiary standard of proof in a federal civil proceeding. *See* 9 WIGMORE ON EVIDENCE § 2498, at 419 (Chadbourn rev. 1981).

---

ful destruction or falsification of records, conduct prohibited by paragraph 103(d)(2).

**2.** See *Kelley v. EPA*, 15 F.3d 1100, 1106–07 (D.C.Cir.1994) discussing abatement orders and reimbursement decisions under section 106, upon which the Chief Judge also relies.

To be sure, as the dissent emphasized, section 107(b) (Defenses) does explicitly refer to "preponderance of the evidence" whereas section 107(a) does not, but that is because Congress put the burden of proof to establish 107(b) defenses on the defendant. Congress thus had to refer to the preponderance of evidence standard in subsection (b) because it wished to make clear that, as to those defenses, the burden was switched. *Cf. Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256–58, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981) (holding that defendants under Title VII, where Congress had placed the burden of proof on plaintiffs, need not prove defenses by a preponderance of the evidence). There is no indication, however, that the evidentiary standard was meant to be any different in section 107(a) than in (b).

The government makes the same primary argument as does the Chief Judge—that "Congress delegated to EPA the authority to construe ambiguous terms that bear on section 107 liability." But, tellingly, the government never asserts that the regulation can be justified as an effort to define "owner or operator"; indeed, the petition for rehearing never points precisely to the terms EPA regards as ambiguous. The government also apparently recognizes the difficulties presented by the dissent's reading of section 107 because it does not embrace the Chief Judge's bifurcated approach to that section. Rather, EPA on rehearing argues that the preponderance of evidence standard applies to factual issues but not legal determinations. Of course, the government is right, but its proposition is beside the point. We did not suggest that section 107 liability issues that could be described as legal rather than factual would be decided as evidentiary questions. We thought the preponderance of evidence standard was significant only because it is not a standard used for judicial review of agency action but rather for a trial *de novo.*

It will be recalled that the government had relied on section 106, which authorizes EPA to reimburse a party for its costs in complying with an EPA clean-up order, as support for its claim that the agency may issue regulations defining liability. The weakness in EPA's argument, as we pointed out in our opinion, is that only subparagraph 106(b)(2)(D), which assumes liability is established and which relates to whether EPA's clean-up order was *"arbitrary and capricious"* (presumably excessive) "as demonstrated by the *administrative record,"* uses administrative law terms. Subparagraph 106(b)(2)(C), speaking to liability, on the other hand, employs the phrase "preponderance of evidence" (a non-administrative law standard) and cross-references subsection 107(a)—thus making clear that liability issues were to be determined *de novo* in federal district court.

We thought that our reading of sections 106 and 107—that Congress put all liability issues (fact and law) to the federal district courts—accorded with the creation of private rights of action under the statute whereby persons or states could sue those liable without EPA's participation or permission. The government complains that we failed to explain why the creation of private rights of action "should diminish EPA's claim to deference in resolving statutory questions." We admit we thought the point was obvious. *See Office of Professional Employees Int'l Union, Local 2 v. FDIC,* 962 F.2d 63, 65 (D.C.Cir.1992) (disposing of the issue in one paragraph). When Congress delegates all the adjudicatory functions under a statute to an administrative agency subject only to APA-like judicial review of the agency's decisions, it is presumed that Congress wishes the agency to enjoy a good deal of leeway to interpret statutory terms, either by regulation or through the adjudication itself. That presumption, articulated most notably in the famous case, *Chevron USA Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), is based on the notion that Congress would wish an agency with political authority, rather than the judiciary, to exercise the policy choices implicit in statutory interpretation of ambiguous terms. Moreover, *Chevron* deference permits a greater degree of national uniformity with respect to the interpretation of a statute administered by an agency enjoying that deference. But, as Justice Scalia has warned, the assumption is just that, and Congress may always act to the contrary. *See* Antonin Scalia, *Judicial Deference to*

*Administrative Interpretations of Law,* 1989 DUKE L.J. 511, 515–16 (1989). When Congress treats an agency only as a prosecutor without specific authority to issue regulations bearing on the questions prosecuted, we accordingly do not assume that Congress has delegated this sort of policymaking authority to the agency. *United States v. Western Elec. Co.,* 900 F.2d 283, 297 (D.C.Cir.1990). That is so in this case, at least with respect to liability issues. And when on top of that prosecutorial function, as here, private rights of action are created—not requiring the participation of the agency at all—it seems somewhat strained to claim that Congress could be thought to have *implicitly* delegated to EPA the policymaking role that *Chevron* presumes (in pursuit of uniformity) to determine who should be liable under the statute. The structure of the statutory scheme is flatly inconsistent with the premise of *Chevron.*

That is not to say, of course, that Congress could not delegate substantive authority to interpret statutory terms to an agency in the mixed position that EPA occupies under CERCLA. It may well have done so, as the government contends, in other parts of the statute regardless of the private rights of action. It may also be true that Congress can and has delegated authority to issue substantive regulations to other agencies under statutory schemes that provide for private rights of action. We are concerned only with whether such authority, and accordant *Chevron* deference, was granted under particular sections of CERCLA. Although it might be thought that this court has gone a long way to recognize EPA's regulatory power under CERCLA, *see Wagner Seed Co., Inc. v. Bush,* 946 F.2d 918, 920 (D.C.Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992), we have insisted that each section of the statute be analyzed separately to determine whether EPA can assert authority to interpret, with *Chevron* deference, substantive terms. *See id.* at 923. Here, it must be remembered, we are not dealing just with section 107 which provides for judicial determination of liability. The terms which EPA wishes to define are not the general phrase owner or operator but the much more detailed language Congress fashioned in section 101(20)(A) to set forth the circumstances under which a lender would be held liable.

Finally, the government reiterates its powerful policy argument that EPA *should* have authority to provide lenders a much greater degree of certainty as to which action or circumstances will create lender liability. We said before that we, as judges, are powerless to respond to such arguments, no matter how meritorious the policy claims.

\* \* \* \* \* \*

Accordingly, we deny the petition for rehearing.

*So ordered.*