**OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, LOCAL 2, Stephen Wilder, Jacqueline Warren, Jean Benjamin, Pamela Bland, Delores Clay, Barbara Samuels, Loretta Scott, Appellants,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Federal Deposit Insurance Corporation, as Receiver of National Bank of Washington, Riggs National Bank, Appellees.**

No. 93–5093.

United States Court of Appeals, District of Columbia Circuit.

Argued May 13, 1994.

Decided July 1, 1994.

David R. Levinson, Washington, DC, argued the cause, for appellants. With him on the briefs was Lucinda M. Finley, Buffalo, NY.

Jaclyn C. Taner, Counsel, F.D.I.C., Washington, DC, argued the cause, for appellees. With her on the brief were Ann S. DuRoss, Asst. Gen. Counsel, Colleen B. Bombardier, Sr. Counsel, and Lawrence H. Richmond, Counsel, F.D.I.C., Washington, DC.

Before: WALD, SILBERMAN and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellants, a union and the terminated bank employees it represents, appeal the district court's determination that the FDIC, as receiver, is not liable for severance payments under a collective bargaining agreement that the agency repudiated. We reverse.

## I.

The National Bank of Washington and the Union were parties to a collective bargaining agreement that provided, *inter alia*, that if a reduction of staff was necessary for economic reasons, the Bank would make severance payments to the terminated employees. Employees who had worked for the Bank for more than six months but less than one year were entitled to one week of pay upon termination. Those who had worked for more than one year were to receive two weeks' pay for each year of service.

On August 10, 1990, the Comptroller of the Currency declared the Bank insolvent and appointed the FDIC as its receiver pursuant to 12 U.S.C.A. §§ 191, 1821(c) (West 1989). Prior to its appointment, the FDIC had engaged in negotiations to sell the Bank to Riggs National Bank. Riggs and the FDIC agreed that the former would purchase the Bank's assets but would not employ its existing staff. Accordingly, on the same day that the FDIC was appointed receiver, FDIC offi-

cials notified Bank employees gathered at various branches that they were being laid off and told at least some that severance payments would not be made. Four days later, on August 14, 1990, FDIC officials met with union representatives and formally repudiated the collective bargaining agreement, as the agency is permitted to do under the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA). *See id.* § 1821(e)(1)(A).

In accordance with statutory procedures, the employees filed claims with the FDIC for severance pay, accrued vacation pay and health benefits. After the agency refused to honor the employees' claims, the union filed suit on their behalf. The FDIC acquiesced partially and processed the claims for vacation pay and health benefits, leaving severance pay as the only controverted item. The district court initially dismissed the case on grounds that the union lacked standing to bring the claims of Bank employees, a decision that we reversed in *Office & Professional Employees Int'l Union, Local 2 v. FDIC,* 962 F.2d 63 (D.C.Cir.1992). On remand, the district court granted summary judgment to the government on the merits. *See Office & Professional Employees Int'l Union, Local 2 v. FDIC,* 813 F.Supp. 39 (D.D.C.1993). The court determined that the employees' rights to severance pay under the agreement had not accrued at the moment of the insolvency because they were contingent upon the employees' termination—which did not occur until *after* the FDIC was appointed receiver. The court reasoned that the FDIC's repudiation of the collective bargaining agreement—although not formally effected until four days after the employees were terminated—"relates back" to the moment of insolvency because FIRREA limits the FDIC's liability for such repudiation to damages "determined as of the date of the appointment of the ... receiver." 12 U.S.C.A. § 1821(e)(3)(A)(ii)(I) (West 1989). Therefore, the court concluded, the FDIC is not liable for severance pay under FIRREA.

## II.

■ Appellants do not challenge the FDIC's authority to repudiate the contract.

Under the statute, the FDIC, within a reasonable time after being appointed receiver, may repudiate any contract that it thinks burdensome. *See* 12 U.S.C.A. § 1821(e)(1) (West 1989). The issue before us is the extent of the FDIC's liability for damages. On that subject, FIRREA provides:

**(3) Claims for damages for repudiation**

**(A) In general**

Except as otherwise provided in subparagraph (C) and paragraphs (4), (5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—

(i) limited to *actual direct compensatory damages;* and

(ii) determined as of—

(I) the date of the appointment of the conservator or receiver; or

(II) in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

**(B) No liability for other damages**

For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include—

(i) punitive or exemplary damages;

(ii) damages for lost profits or opportunity; or

(iii) damages for pain and suffering.

*Id.* § 1821(e) (emphasis added).

■ The union claims that the employees are entitled to severance pay as "actual direct compensatory damages" stemming from the repudiations. The FDIC counters with a two-pronged argument, that appellants have no cognizable legal claim and alternatively that the damages they seek do not qualify under the statute. The district court, accepting the FDIC's first prong, determined that the FDIC could terminate the Bank employees without incurring any liability for severance pay because at the time the FDIC was appointed receiver the employees' contractual rights to severance pay had not yet "ac-

crued"; the employees have valid claims only *after* they are terminated. We disagree. The employees had a right to severance pay as of the date of the appointment—albeit a contingent one—and that right should be treated essentially the same as the right to accrued vacation pay or health benefits.

That severance payments are not paid unless and until an employee is terminated (laid-off) for economic reasons, while significant for determining the value of the payments at any given time, does not mean that the right to such severance payments is worthless until the date of termination. If the Bank, for instance, had repudiated the collective bargaining agreement and the union had chosen to sue for damages under section 301 of the Taft–Hartley Act rather than, as would be typical, for enforcement of the agreement, the district court surely would be obliged to award the value of the repudiated severance pay provisions as damages to the employees. So viewed, the employees' right to severance pay is, contrary to the district judge's assumption, "vested." It is part of the employee's compensation package which, like health or life insurance, has a real present value (discounted, as we explain below, by the likelihood that the contingency triggering payment will not occur).

We do not quarrel with the district court's conclusion that no significance attaches to the fact that the FDIC formally repudiated the contract four days *after* the employees were terminated; under (e)(3)(A)(ii)(I), the FDIC's repudiation relates back to the date of its appointment—at least for purposes of measuring the FDIC's liability. The damages for which the FDIC is responsible are, by statute, to be determined as of the date of the appointment of the receiver. That means that the value of the severance payments under the agreement should be discounted for the risk that the employees would not be discharged for economic reasons—for instance, that the employees would quit, retire, die, or be discharged for misconduct.[1] (In this case, since the appointment of the FDIC and the termination of the employ-

---

1. *Cf. Covey v. Commercial Nat'l Bank of Peoria,* 960 F.2d 657, 660–61 (7th Cir.1992) (discounting the value of a contingent liability to determine whether a debtor is insolvent under 11 U.S.C.

§ 548(a)); *In re Xonics Photochemical, Inc.,* 841 F.2d 198 (7th Cir.1988); *In re Chase & Sanborn Corp.,* 904 F.2d 588, 594 (11th Cir.1990).

ees both occurred on the same date—thereby eliminating the contingencies—it is not necessary to so discount the value of the severance payments.) Such questions, however, deal not with *whether* appellants have a claim but rather with *how much* the claim is worth. It is established that the general rule requiring reasonable certainty in damages—"that all damages resulting necessarily and immediately and directly from the breach are recoverable, and not those that are contingent and uncertain," *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931)— applies only to the former question and not to the latter. *See id.; see also* 1 ROBERT DUNN, RECOVERY OF DAMAGES FOR LOST PROFITS § 1.3, at 11 (4th ed. 1992) ("While the proof of the *fact* of damages must be certain, proof of the *amount* can be an estimate, uncertain or inexact."). In this case, although the obligation to pay attaches only if an employee were laid off for economic reasons, it can hardly be suggested that this sort of protection lacks any immediate value—particularly after the last few years of "downsizing" in the American labor market.[2]

The FDIC points to cases under ERISA which hold that severance benefits are not "vested" under that statute and therefore the employer has the right to terminate such benefits. *See, e.g., Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d. Cir.1990), *cert. denied*, 501 U.S. 1231, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991); *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990); *Young v. Standard Oil (Indiana)*, 849 F.2d 1039, 1045 (7th Cir.), *cert. denied*, 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). These cases are inapposite, however, since they stand only for the proposition that under ERISA, unfunded, unvested severance pay provisions are "welfare" benefit plans

that the employer enjoys considerable flexibility to alter, as opposed to "pension" benefit plans subject to much more stringent statutory requirements. *See Reichelt*, 921 F.2d at 429; *compare* 29 U.S.C. §§ 1021–31, 1101–14 (1988) *with id.* §§ 1051–85. These cases do not address whether a promise to make severance payments may be binding and enforceable under contract law. *Cf. Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987) (state law mandating certain severance benefits is not preempted by ERISA). The agency's reliance on *Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989), likewise is of no moment. The Court, in that ERISA case, stated that "[u]nlike normal severance pay, the employees' right to compensation for accrued vacation time is not contingent upon the termination of employment." *Id.* at 120, 109 S.Ct. at 1675. That *dictum* merely acknowledges the background contingency of this case; it does not address the issue before us.

The closest analogy to an obligation to make severance payments that has been brought to our attention is a bank's issuance of a standby letter of credit, which entitles the holder of the letter to its face value from the bank if a third party defaults. In traditional bank receivership law, where claims are similarly determined at the date of insolvency, *see United States ex rel. White v. Knox*, 111 U.S. 784, 787, 4 S.Ct. 686, 687, 28 L.Ed. 603 (1884), it is settled that standby letters of credit are valid ("provable" in receivership parlance) claims against the receiver even though the bank's obligation to pay is still contingent as of the date of insolvency. *See, e.g., Citizens State Bank of Lometa v. FDIC*, 946 F.2d 408, 415 (5th Cir.1991); *FDIC v. Liberty Nat'l Bank & Trust Co.*, 806 F.2d 961 (10th Cir.1986); *First Empire Bank–New York v. FDIC*, 572

---

**2.** Since the severance payment clause is part of a collective bargaining agreement, an employee is not guaranteed that such a provision will remain in future agreements, or that the collective bargaining relationship will last indefinitely (although both typically do). Yet the Supreme Court held in *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), that a company which shut down a plant and

terminated its employees four days *after* a collective bargaining agreement expired nevertheless was obliged to proceed to arbitration to determine whether severance payments had "accrued" or "vested" under the contract prior to its expiration. (Like the FDIC here, the company agreed to pay accrued vacation time.) And, in any event, there is no question here that the agreement was in force when the FDIC repudiated it.

F.2d 1361, 1367 (9th Cir.), *cert. denied,* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

The FDIC attempts to distinguish these cases by claiming that the holder's rights actually "vest" when the letters are issued, not when they are presented; the banks had contracted to honor the letters, insolvency or not. Unlike a commercial letter of credit, however, which imposes an absolute obligation on the bank to pay the face value, a standby letter of credit is payable only if a third party defaults and thus it imposes only a contingent liability on the bank. *See American Ins. Ass'n v. Clarke,* 865 F.2d 278, 282 (D.C.Cir.), *withdrawn in not relevant part,* 865 F.2d 278 (D.C.Cir. 1988). A standby letter of credit is similar to the promise of severance pay in that regard. Each obliges the bank to pay upon the occurrence of a certain event: the former when the third party defaults and the latter when the employee is terminated for economic reasons. The receiver is liable for the standby letter of credit even if the third-party default occurs after the insolvency, *see Citizens Bank,* 946 F.2d at 415, and we see no reason why the result should be different for severance payments where the termination is not effected until after the appointment of the receiver.[3]

We think, therefore, that the employees (and the union on their behalf) have a valid legal claim for severance pay based on the FDIC's repudiation of the agreement. There remains the FDIC's argument that the

kinds of damages sought for that breach are not "actual direct compensatory damages," in support of which the agency relies primarily on *Howell v. FDIC,* 986 F.2d 569 (1st Cir. 1993). In that case, the First Circuit held that severance pay agreements negotiated by four bank officers with a savings and loan that failed less than a year later did not entitle them to damages under 1821(e). Although the opinion is thoughtfully crafted (indeed, the court took care to note that it reached its conclusion "not without some misgivings," *Howell,* 986 F.2d at 572) and the panel was apparently troubled by the prospect of severance agreements reached in the shadow of insolvency,[4] we disagree with court's analysis.

The First Circuit saw an employer's agreement to make severance payments as a form of liquidated—and therefore, by definition, not *actual*—damages for an injury that an employee might suffer when terminated. The executives in that case sought an agreement to make severance payments as inducement for their remaining at the bank during a financially rocky period. The court said the "officers may, or may not, have suffered injury by remaining at the bank, depending on what options they had in the past that are not available now." *Id.* at 573. But the court overlooked, in our opinion, the point that an employer's promise to make severance payments is part of the *consideration* of the employment contract. (In that regard the First Circuit's approach is really a vari-

---

**3.** In bankruptcy law, to which we may look while interpreting FIRREA, *see Office & Professional Employees Int'l Union, Local 2 v. FDIC,* 962 F.2d 63, 68 (D.C.Cir.1992), a controversy has arisen as to whether severance payments are "administrative expenses" of the estate such that they would receive priority under the Bankruptcy Code. A number of courts, consistent with our reasoning today, have held that severance pay is compensation for employment services, some of which were rendered before the bankruptcy and therefore does not receive priority as an administrative expense. *See, e.g., In re Pacific Far East Line, Inc.,* 713 F.2d 476, 478 (9th Cir.1983); *In re Health Maintenance Foundation,* 680 F.2d 619, 621 (9th Cir.1982); *In re Mammoth Mart, Inc.,* 536 F.2d 950, 953 (1st Cir.1976); *In re Public Ledger, Inc.,* 161 F.2d 762, 771 (3d Cir.1947). We note, however, that a competing line of cases hold that severance payments are administrative expenses because they compensate for the loss

incident to termination and therefore are "earned" *in toto* when the employees are dismissed by the estate. *See, e.g., Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 104 (2d Cir.1986); *York v. NLRB,* 709 F.2d 1138 (7th Cir.1983).

We do not address the question whether severance pay is an "administrative expense" of the receivership under 12 U.S.C.A. § 1821(e)(7)(B) (West 1989), since that section by its own terms applies only to personal services rendered after appointment of the receiver. Here, it is undisputed that the employees were terminated immediately after the FDIC was appointed and did not serve the receivership in any capacity.

**4.** We note that the FDIC has authority to ban those agreements outright under the "golden parachute" provision of the statute, 12 U.S.C.A. § 1828(k)(4) (West Supp.1993).

ant of the district court's analysis—that a right to severance payments is not "vested" until the actual economic layoff takes place.)

So viewed, the injury occurs when the contractual right is repudiated, and it matters not whether the executives would have had other options when they entered into the contract or whether they could find comparable jobs after termination. By looking to past options, the First Circuit seemed to question the value of the consideration the executives put up—their continued employment—which is beside the point. And by focusing on potential opportunities, the court seemed to view severance pay as an approximation of the employee's future salary for an agreed term. Yet, as the court noted, the executives did not have a term agreement; neither the bank nor the executives were obligated to continue the relationship. *See id.* at 570. The necessary implication of that observation is that the promised severance payment was not a provision for liquidated damages since the bank did *not* breach the employment contract by laying off the executives. Instead, the promised severance payment was merely a modification of the at will relationship; the bank could terminate the officers, but if it did so in a manner that activated the clause, it was obligated to make severance payments. The court seemed to acknowledge this point, but dismissed it rather cryptically: "[T]he at will status of the appellants is not decisive; they did have contracts and our task is to see whether the promised payments fit into FIRREA's compensable-damage pigeonhole." *Id.* at 573 n. 3. In our view, the latter inquiry is necessarily resolved by the former observation. The at will relationship means that severance payments are properly characterized as consideration for entering into (or continuing under) the employment contract and therefore are compensable as actual damages under FIRREA when the contract is repudiated.

■ Therefore, because we believe the First Circuit miscategorized the nature of severance provisions in employment contracts, we are not persuaded by its reasoning. The union's claim here cannot be rejected as seeking "liquidated damages" instead of actual damages. One could still ask, however—and the FDIC at least hints at this argument—whether severance payments are analogous to the sorts of damages, particularly lost profits or opportunities, which Congress explicitly excluded in section 1821(e)(3)(B)(ii). We think not. Congress appears to us to have wished to distinguish between those damages which can be thought to make one whole and those that are designed to go somewhat further and put a plaintiff securely in a financial position he or she would have occupied but for the breach. Thus, lost opportunities and lost profits have a speculative nature that severance pay does not. The latter, as we have noted, has already vested and only its amount is subject to contingencies, whereas whether future profits and opportunities will be realized at all is a matter of speculation, since they have not accrued at the time of the repudiation. And lost profits—like future rent, which the statute also specifically precludes, 12 U.S.C.A. § 1821(e)(4) (West 1989)—looks to what the plaintiff would have earned in the future but for the breach. The defendant owes them to the plaintiff not because the plaintiff has already accrued or earned that amount under the contract but because, absent the breach, the plaintiff would have been in a position to earn those sums.

■ The FDIC implores us to look to the underlying purpose of FIRREA. While acknowledging the complete absence of "any illuminating legislative history," the First Circuit stated that "[i]t is fair to guess that Congress, faced with mountainous bank failures, determined to pare back damage claims founded on repudiated contracts." *Howell,* 986 F.2d at 572. That may be so, but the observation does not address the specific question we face in this case—namely *which* damage claims, however few, are preserved, for Congress did not eliminate *all* claims founded on repudiated contracts. The necessary corollary to the limitation that damage claims are to be "determined as of the date" of insolvency is that all claims existing on that date are preserved. *Cf. FDIC v. Liberty Nat'l Bank,* 806 F.2d 961, 965 (10th Cir. 1986) ("[I]t is as much the purpose of insol-

vency statutes to preserve the rights existing at the time of insolvency as to prevent new rights from arising thereafter.").

\* \* \* \* \* \*

Accordingly, we reverse the judgment of the district court and remand the case for calculation of damages consistent with this opinion.

*So Ordered.*